Howard Ross Cabot, Bar #006669
Christopher S. Coleman, Bar #018287
Jacob C. Robertson, Bar #024763
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
HCabot@perkinscoie.com
CColeman@perkinscoie.com
JRobertson@perkinscoie.com

*Attorneys for Defendants*
  *The Vanguard Group, Inc. and*
  *Vanguard Marketing Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Borchers, as Trustee and as attorney in fact and, and Jerald S. Chesler, as a Trustee of the Olson Living Trust,<br><br>Plaintiffs,<br><br>v.<br><br>The Vanguard Group, Inc. and Vanguard Marketing Corporation,<br><br>Defendants. | No. CV08-02138-PHX-ROS<br><br>**VANGUARD'S MOTION FOR SUMMARY JUDGMENT and MEMORANDUM IN SUPPORT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

**MOTION**

Pursuant to Federal Rule of Civil Procedure 56(b), Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation (collectively "Vanguard") move for summary judgment on the single claim asserted by Plaintiffs Barbara Borchers and Jerald S. Chesler (successor trustee to Betty D. Olson).[1]  This motion is supported by

---

[1] Betty D. Olson passed away in 2009 while this claim was pending.  [*See* Dkt. 25]

Vanguard's Separate Statement of Material Undisputed Facts ("SOF"), the Affidavit of Joseph F. Parlapiano ("Parlapiano Aff.") and the Declaration of Counsel in Support of Vanguard's Motion for Summary Judgment ("Counsel Decl."), the record in this case, and the following Memorandum in Support.

## MEMORANDUM IN SUPPORT

Relying on A.R.S § 47-4401 (Arizona's version of UCC § 4-401), Plaintiffs, who are the current trustee of the Olson Living Trust (Jerald S. Chesler) and the former trustee's daughter (Barbara Borchers) claim that Vanguard is liable to them because it honored checks that the late mother's son allegedly forged and applied against the mother's account at Vanguard. Plaintiffs' claim, however, fails as a matter of law because the one-year statute of repose for making such a claim has long since run, and Plaintiffs still refuse to identify the specific checks they contend were forged and allegedly should be reimbursed.

## Factual Background

Betty D. Olson, as trustee of the Olson Living Trust, maintained investments in Vanguard mutual fund accounts ("Olson Trust Account"). [Parlapiano Aff. ¶¶ 7, 9] The Tax-Exempt Money Market Fund, Account Number 88006108892, had check writing privileges.[2] [*Id.* ¶¶ 9,12] Plaintiff Barbara Borchers is Ms. Olson's daughter.[3] [Counsel Decl., Ex. 1 (Borchers Dep.) at 9:13-18]

In March 2008, with Ms. Olson's health apparently failing, Ms. Borchers and her brother Michael Olson made competing attempts to gain access to the Olson Trust Account. [Counsel Decl., Ex. 1 (Borchers Dep.) at 113:5 – 114:4; Ex. 2 (Matysik Dep.) at 57:3-15] In an apparent attempt to justify why they should have access to the account,

---

[2] Certain Vanguard mutual fund accounts allow for redemptions to be made from the account via check.

[3] Although not material to this motion, Ms. Borchers never completed the paperwork Vanguard required to register as trustee on the Olson Trust Account. Vanguard reserves the right to contest her standing as a plaintiff in this action.

each accused the other of wrongdoing in connection with the account. [*Id.*, Ex. 2 (Matysik Dep.) at 25:21 – 27:9]  After it became apparent to Vanguard that it had received incomplete, competing "agent authorization" paperwork from each sibling, the matter was referred to Vanguard's Fraud Department in late March 2008. [*Id.*, Ex. 1 (Borchers Dep.) at 99:24 – 100:9; Ex. 2, (Maytsik Dep.) at 55:16-24]  In consultation with Vanguard's Fraud Department, members of Vanguard's client service team spoke with Ms. Olson, as well as with Ms. Borchers, to the extent Ms. Olson gave authorization, in an attempt to resolve the issues. [*Id.*, Ex. 1 (Borchers Dep.) at 117:6-12]

Ultimately, neither sibling submitted complete paperwork that would have enabled either one to take over as trustee of the Olson Trust Account or otherwise authorize them to act on the Olson Trust Account. [Counsel Decl., Ex. 1 (Borchers Dep.) at 115:9 – 22; Ex. 2 (Matysik Dep.) at 36:20–37:13]  While the Vanguard Voyager representatives (with the assistance of the Fraud Department) were working with the parties to determine which (if any) sibling was authorized on the account, Betty D. Olson, as trustee of the account and through her legal counsel, redeemed her accounts with Vanguard.[4]  [SOF ¶ 1]  Over six months after redeeming all assets in the account, on October 23, 2008, Plaintiffs filed a Complaint alleging that while the account was open, Michael Olson had forged an unspecified number of checks from the Olson Living Trust Account for an unspecified amount over an unspecified period of time. [Dkt. 1]

## **Argument**

I.  **THIS COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PAYMENT ON UNAUTHORIZED SIGNATURE.**

To recover for unauthorized payment pursuant to A.R.S. §47-4401(A) (or UCC 4-401(a)), a financial institution's customer must comply with the statutory duty to discover

---

[4] Plaintiffs' Initial Disclosure Statement suggested that the redemption of the account was somehow alleged to be fraudulent, but Plaintiffs admitted in discovery that Ms. Olson received the funds, and there was nothing fraudulent in connection with the redemption of the account. [SOF ¶ 2]

-3-

and report an unauthorized signature to the financial institution maintaining the account. A financial institution establishes a complete defense to any claim based on a forged signature if the customer fails to discover and report the allegedly unauthorized payment within a year of when an account statement identifying the payment was made available. A.R.S. § 47-4406(F) (same as UCC 4-406(f)).

Accordingly, to establish the defense on summary judgment, a defendant financial institution must show on the basis of undisputed facts that: (a) it provided account statements that identify all the items paid; and (b) the customer did not report the forged items it seeks to recover within a year of when the pertinent account statements were made available. *See id.*; Fed. R. Civ. Proc. 56(b); *see also, e.g., Peters v. Riggs Nat'l Bank, N.A.*, 942 A.2d 1163, 1171 (D.C. Cir. 2008) (affirming summary judgment pursuant to the D.C. Code's identical version of UCC 4-406 where account statements were made available to a customer and customer failed to provide timely notice). As set forth below, the undisputed facts show Vanguard is entitled to summary judgment on this basis.

**A.    It is Undisputed that Vanguard Mailed Account Statements to the Address of Record.**

To be able to invoke the one-year statute of repose for allegedly forged checks, the financial institution must make available to the customer a "statement or items." A.R.S. § 47-4406(f) (same as U.C.C. § 4-406(f)).[5] The statement must either include the actual item (e.g., the canceled check) or "provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid." *Id.* § 47-4406(A) (same as U.C.C. § 4-406(a)). "The statement of account provides sufficient information if the item is described by item number, amount, and date of payment." *Id.*

---

[5] An "item" is "any instrument for the payment of money even though it is not negotiable but does not include money." A.R.S. § 47-4104(A)(9) (same as U.C.C. § 4-104(a)(9)).

-4-

Here, Plaintiffs cannot reasonably dispute that Vanguard made account statements available to them. As part of its regular business operations, Vanguard prepares a periodic statement for each account. [SOF ¶ 3] For accounts that allow for check writing, the statement identifies each check that is paid on that account. [*Id.*] The statements are mailed to the address of record designated by the account-holder shortly after the end of the reporting period (either monthly or quarterly depending on the level of activity of the account). [SOF ¶ 4] In the event of returned mail, Vanguard promptly contacts the customer, and if the customer does not respond, freezes the account. [*Id.*] In this case, Vanguard's records show that while the Olson Trust Account was open, Vanguard mailed account statements to the address of record shortly after each reporting period. [SOF ¶ 5] Vanguard's records also show no returned mail for the Olson Trust Account. [SOF ¶ 6] Plaintiffs produced a set of "Third Party Copy" account statements in discovery, and Ms. Borchers admitted in deposition that she received copies of the account statements beginning around July 2007 at her mother's request. [SOF ¶ 7-8]

Further, it is beyond fair dispute that these account statements provided Plaintiffs with sufficient information to identify the checks that were paid from the account. The account statements provide the check number, amount, and date of payment of each check paid on the account – the very information required for a sufficient "statement of items" under A.R.S. § 47-4406(A). [SOF ¶ 9]

Finally, while Plaintiffs may contend that Vanguard did not make the statements "available" because the alleged wrongdoer, Michael Olson, allegedly intercepted them at various points while the account was open, such an argument fails as a matter of law. "The modern UCC case law . . . is virtually unanimous in holding that, once account statements are mailed to the account holder's proper address, the risk of nonreceipt falls on the account holder and interception of the statements by a wrongdoer does not relieve the account holder of the duty to examine the statements and report unauthorized items to

the bank." *Stowell v. Cloquet Co-op Credit Union*, 557 N.W.2d 567, 571-72 (Minn. 1997) (citing cases from Arkansas, California, Georgia, Idaho, Missouri, New York, and Washington in which courts held that interception of statements by dishonest spouses, bookkeepers, housekeepers, business partners, and employees did not preclude application of their states' counterpart to UCC § 4-406(f)); *see also Peters*, 942 A.2d at 1170-1171 (adopting same rule); *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 94 (Tex. 2000) (same). Thus, regardless of whether account statements are actually received, a customer has the duty "to either examine those statements or find out why they are not coming." *Borowski v. Firstar Bank Milwaukee, N.A.*, 579 N.W.2d 247, 250 (Wis. App. 1998) (affirming summary judgment despite plaintiff's claim that his girlfriend intercepted statements and lied about reasons that statements did not come).

### B. It is Undisputed that Over a Year Has Passed Since the Account Was Closed, and that Plaintiffs Have Yet to Report or Identify Any Specific "Item."

Once a financial institution establishes that a statement of account is made available to its customer, A.R.S. § 47-4406(F) (which is the same as U.C.C. 4-406(f)) states that "a customer who does not within one year after the statement or items are made available to the customer (subsection A of this section) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration."

Despite admittedly having access to the account statements and somehow coming to the conclusion that some checks were forged, Plaintiffs have failed to identify and report any "unauthorized signature on or any alteration of [an] item." *Id.* Vanguard has no record of any *specific* checks reported by Ms. Olson as bearing an unauthorized signature. [SOF ¶ 10] Similarly, Ms. Olson never provided Vanguard with a statement of forgery in accordance with Vanguard's procedure or otherwise sought reimbursement for specific amounts. [SOF ¶ 11]

Nor can Plaintiffs say they have not had an ample opportunity to make such a report. Plaintiffs failed set forth any items allegedly containing unauthorized signatures in their Complaint or First Amended Complaint. [Dkts. 1 & 30] Plaintiffs' Initial Disclosure Statement does not identify any specific checks or even an amount that they believe was paid due to forged checks, but instead generally describes "[a]mounts from fraudulent checks written on Vanguard Voyager Account" as an item of damages. [Counsel Decl., Ex. 4, at 4]

Further, in responses to Vanguard's interrogatories requesting a list of the items alleged to have been forged and dates they were reported, Plaintiffs failed to identify any checks or dates, stating only that "[t]he items and instruments that were reported are in the control of Vanguard, and were displayed and discussed at in person meetings between Vanguard BARBARA BORCHERS and BETTY OLSON." [Counsel Decl., Ex. 5 (*see* Answer to Interrogatory No. 1)] When pressed for a more complete response, Plaintiffs continued to be unable to list any specific checks bearing unauthorized signatures or dates they were reported. [*Id.*, Ex. 6 (*see* Supplemental Answer to Interrogatory No. 1)] At deposition, Barbara Borchers testified that in summer 2005, she and her mother met with a Vanguard representative out of concern that there were discrepancies in the account statements she was receiving. [Counsel Decl., Ex. 1 (Borchers Dep.) at 38:25 – 39:14] Ms. Borchers testified that during the meeting, copies of four checks were shown to Ms. Olson, but Ms. Olson did not call those particular checks to Vanguard's attention and did not want the funds reimbursed. [*Id.*, Ex. 1 (Borchers Dep.) at 39:22 – 42:16, 52:24 – 53:5] Instead, Ms. Olson asked Vanguard not to pursue the alleged check fraud because she did not want her son to get in trouble.[6] [*Id.*] In the June 2005 meeting and

---

[6] Even if Ms. Olson had claimed the four unidentified checks allegedly discussed were wrongfully paid at that time, such a claim would be barred by the three-year statute of limitation. A.R.S. § 47-4111 ("An action to enforce an obligation, duty or right arising under this Chapter must be commenced within three years after the cause of action accrues."). Plaintiffs did not file their action until October 23, 2008—more than three years after the meeting or meetings in summer 2005.

-7-

in the time periods after the meeting, Ms. Borchers testified that she does not recall reporting or hearing her mother identify specific checks bearing an unauthorized signature that they believed should be reimbursed by Vanguard. [SOF ¶ 11]

In addition to the meeting reference, the interrogatory responses state vaguely that certain documents reflect "reports of fraudulent checks were made to Vanguard," "reference the check fraud," and "references a meeting with a Vanguard representative to 'red flag' all check signatures." [Counsel Decl., Ex. 6 (*see* Supplemental Answer to Interrogatory No. 1)] To the extent the documents cited by Plaintiffs allude generally to some sort of fraud by Michael Olson, however, nothing in the documents constitutes a report of specific checks. In short, Plaintiffs have simply failed to specify any items, which would be reflected in the account statements Plaintiffs produced, that allegedly contain unauthorized signatures.

Although no reported Arizona decision has analyzed whether general allegations of forgery or fraud constitute a sufficient "report" of "the customer's unauthorized signature on or alteration on the item" pursuant to A.R.S. § 47-4406, courts in other jurisdictions have overwhelmingly held that general allegations of fraud are insufficient under their counterparts to U.C.C. §4-406—the customer must specifically identify each item bearing an unauthorized signature or alteration if she wishes to seek recovery from the financial institution. *See, e.g., ASP Enters., Inc. v. Guillory*, 22 So. 3d 964 (La. App. 2009) (rejecting "[g]eneral notice" that "theft or forgery has, or might have, occurred" and affirming summary judgment for defendant where specific notice of particular item was not provided until discovery responses were served more than a year from the time the items were made available); *New Gold Equities Corp. v. Chemical Bank*, 251 A.D.2d 91 (N.Y. App. Div. 1998) (affirming grant of summary judgment because a "report" pursuant to UCC §4-406 "requires a writing clearly identifying the items claimed to have been improperly paid") (internal citations omitted); *First Place Computers, Inc. v. Sec.*

*Nat'l Bank of Omaha*, 558 N.W.2d 57, 60-61 (Neb. 1997) (general report of irregularities on account not sufficient "report" pursuant to UCC §4-406(f)); *see also* 6C Ronald Anderson & Larry Lawrence, Uniform Commercial Code § 4-406:115, at 496-97 (3d ed. 2000) ("In order to be protected under UCC § 4-406, the customer must sufficiently identify the item and account.  General references to forgeries is not enough.").

Here, any vague references in the record to fraud by Michael Olson fall far short of the specificity required by A.R.S. § 47-4406.  Betty Olson liquidated the Olson Trust Account over two and a half years ago in April 2008, and Plaintiffs have still failed to identify a single check, or even disclose an amount, that they believe was improperly paid on the basis of an unauthorized signature.  And any attempt to start identifying allegedly unauthorized checks now is precluded by the one-year period of repose in A.R.S. § 47-4406(F).  As such, this Court should grant summary judgment in Vanguard's favor.

## Conclusion

For these reasons, the Court should grant Vanguard's motion for summary judgment.

Dated:  October 29, 2010

**PERKINS COIE BROWN & BAIN P.A.**

By:/s/ Jacob C. Robertson
   Howard Ross Cabot
   Christopher S. Coleman
   Jacob C. Robertson
   2901 North Central Avenue, Suite 2000
   Phoenix, Arizona  85012-2788

*Attorneys for Defendants
  The Vanguard Group, Inc. and
  Vanguard Marketing Corporation*

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on October 29, 2010, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Philip J. Nathanson [*philipj@nathanlawfirm.com*]
> The Nathanson Law Firm
> 8765 East Bell Road, Suite 110
> Scottsdale, Arizona 85260
> *Counsel for Plaintiffs*

☒ I hereby certify that on October 29, 2010, I served the attached document by first class mail on Judge Silver, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

s/ Indy Fitzgerald