Philip J. Nathanson    Arizona State Bar #013624
THE NATHANSON LAW FIRM
8765 E. Bell Rd. – Suite 101
Scottsdale, AZ  85260
(480) 419-2578
(480) 419-4136
   *Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Borchers and Jerald S. Chesler, as Trustee of the Betty D. Olson Revocable Trust and The Olson Living Trust,<br><br>Plaintiffs,<br><br>v.<br><br>The Vanguard Group, Inc. and Vanguard Marketing Corporation,<br><br>Defendants. | No. CV08-02138-PHX-ROS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.** |

Plaintiffs, BARBARA BORCHERS and JERALD S. CHESLER, as Trustee of the Betty D. Olson Revocable Trust and The Olson Living Trust, submit this Response to the Motion for Summary Judgment filed by Defendants, THE VANGUARD GROUP, INC. and VANGUARD MARKETING CORPORATION (hereinafter "Vanguard").

## **INTRODUCTION**

Defendant Vanguard is a mutual fund.  The accounts in question were investment accounts, not bank accounts.  Vanguard's witnesses admitted at deposition that Vanguard is not a bank.  The statutory section relied on in defendants' motion, A.R.S. §47-4406(F), by its own terms, only applies to a "bank."  Therefore, under the testimony of defendants' own witnesses, defendants' legal defenses under A.R.S. §47-4406(F) do not apply.  That is why defendants' motion refers to Vanguard as a "financial institution."  Vanguard attempts to broaden the scope

of the statute beyond its application to a "bank." The problem with defendants moving to another level of generalization is that the statute does not apply to a "financial institution." It only applies to a "bank." To be sure, the Vanguard mutual fund provided check writing privileges so that customers could withdraw money from their investment accounts. But that did not make Vanguard a "bank" under the statute. The recognition of that fact, and legal conclusion that flow from that fact, defeat the motion for summary judgment.

But even assuming, *arguendo*, and contrary to the language of the statute, that the strictures of A.R.S. §47-4406(F) apply to an investment account at a mutual fund, summary judgment is still inappropriate because plaintiffs called and met with Vanguard employees numerous times about the forgery issue. The meetings began in 2005. The tapes of those phone calls were produced by Vanguard in this case and are submitted with this Response. Moreover, Vanguard admittedly failed to provide the necessary forms to plaintiff that it routinely gave to customers so that a customer could report specific forged checks. And last, but not least, plaintiffs met with a Vanguard representative who showed the plaintiffs the checks that they believed were forged. So Vanguard itself had, through its security apparatus, identified suspicious checks. To that end, Vanguard informed the plaintiffs that it would "flag" their investment accounts, but then it failed to do what it had undertaken to do. Simply put, that was a lack of due care that creates triable issues of fact precluding summary judgment.

**STATEMENT OF FACTS**

The 30(b)(6) deponent designated by Vanguard was William Matysik, a senior fraud investigator. He listened to 20 to 25 phone calls between Betty Olson, her daughter, Barbara Borchers and Vanguard representatives (Pltf. SSOF, ¶45-46).

Vanguard asked its customers to fill out its Statement of Forgery, which specifically identifies by CWR number exactly the check, the amount, the payee, what fund it came from, and that she did not receive any direct benefit from the check. Each

check required a separate Vanguard Statement of Forgery pursuant to Vanguard's policies and procedures, but Vanguard did not send the required documents, such as the Statement of Forgery, to Betty Olson, and the Vanguard representative did not know if she was asked to identify forged checks (Pltf SSOF, ¶47-48). It was Vanguard's policy and procedure to complete the Statement of Forgery identifying the specific checks that were forged. Vanguard's policy was that if a client calls in then Vanguard is going to ask them to identify by check number which checks they are speaking about.. The fraud team then completes the Statement of Forgery listing the checks (Pltf. SSOF, ¶49-50).

According to the Vanguard deponent representative, there was no allegation made that checks were being written that were not authorized by the client, Betty Olson, which allegation triggers the Statement of Forgery procedure (Pltf. SSOF, ¶50-51). But one document did have the amounts of checks that was sent to Vanguard (Pltf. SSOF, ¶51-52).

The representative deponent did not know if forged checks were reported. He did know that Shelly Wilson of Vanguard met with Betty Olson in 2005 at Vanguard's Scottsdale office (Pltf. SSOF, ¶55-56).

Vanguard is not a bank. It is an investment company in the mutual fund business The accounts were mutual fund accounts, investment accounts (Pltf. SSOF, ¶57-58, 64).

Shelly Wilson was and is a customer service representative in Scottsdale. In 2005 Betty Olson and Barbara Borchers alerted her, as a Vanguard employee, that they were afraid of someone writing checks, signing the checks. Betty Olson told Shelly Wilson

that her daughter Barbara Borchers was authorized to deal with the check writing issue. Barbara and Betty Olson told Shelly Wilson that there were checks that Betty Olson had not signed. Wilson followed Vanguard policy and notified the fraud department that the client alleged there were checks she was not signing (Pltf. SSOF, ¶59-61).

Barbara and Betty also came in to see Shelly Wilson at the Vanguard office. Shelly does not remember whether she showed Barbara forged checks (Pltf. SSOF, ¶62-63). Wilson said it was apparent that the checks in question did not have Betty Olson's signature on them because the signatures did not match when compared against Betty's signature card on the computer.

## ARGUMENT

### I. VANGUARD IS NOT A BANK UNDER THE ARIZONA UCC. IT IS AN INVESTMENT COMPANY

Defendant relies on A.R.S. §47-4406(F), which provides in relevant part as follows:

> "F. Without regard to care or lack of care of either the customer or **the bank**, a customer who does not within one year after the statement or items are made available to the customer (subsection A of this section) discover and report the customer's unauthorized signature on or any alteration on the item is precluded **from asserting against the bank** the unauthorized signature or alteration…."

(emphasis added).

Vanguard offers no explanation in its motion for summary judgment as to why a statute that plainly applies to a "bank" also applies to a mutual fund. Vanguard's conclusory claims of being a "financial institution" do not bring it within the statute it invokes. For that reason alone, summary judgment should be denied because Vanguard cannot demonstrate that it is entitled to judgment as a matter of law.

-4-

## II. EVEN IF VANGUARD IS A BANK UNDER THE ARIZONA UCC. IT IS NOT RELIEVED OF LIABILITY.

Defendants argue that plaintiffs are precluded from asserting against Vanguard a check in a statement, on the grounds that the signature was forged or that the instrument was altered, if Vanguard establishes that the plaintiffs failed to comply with their duties with respect to such matters, where the customer's breach of duty has resulted in loss to the bank. However, even if Vanguard was a bank, the Uniform Commercial Code provides that the preclusion does not apply if the customer establishes that the bank failed to exercise ordinary care to detect unauthorized signatures or alterations. *Aikens Const. of Rome, Inc. v. Simons*, 284 A.D.2d 946, 727 N.Y.S.2d 213 (4th Dep't 2001)(Even if bank customer failed to notify bank of check forgeries within 14 days after customer received bank statement that included first forged check, bank would not be protected from liability if customer could establish that bank did not observe standards of ordinary care). The customer's breach of his duties as set forth in the Code has no effect if it is established that the bank did not exercise ordinary care. Two other subsections of UCC § 4-406, A.R.S. §47-4406(D) and (E), establish the legal structure within which the bank's and the customer's conduct is evaluated. A.R.S. §47-4406(D) states that:

> "D. If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection C of this section, the customer is precluded from asserting against the bank:
>
> 1. The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
>
> 2. The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank."

The next subsection, A.R.S. §47-4406(E), is implicated if the bank satisfies the elements of A.R.S. §47-4406(D). If that occurs, subsection (E) then governs, which states that:

> "E. If subsection D of this section applies **and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion** according to the extent to which the failure of the customer to comply with subsection C of this section and the failure of the bank to exercise ordinary care contributed to the loss. **If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection D of this section does not apply**."

Defendants' motion fails to mention or analyze the contours of subsections (D) and (E). Nor does Vanguard offer any evidence to this Court to show that "it suffered a loss by reason of the failure" under A.R.S. §47-4406(D)(1). Nor does it offer any evidence on the notice issue under A.R.S. §47-4406(D)(2), although from plaintiff's point of view Betty Olson and her daughter Barbara Borchers notified   Thus, all of the subsections § 4-406 govern the situation where a Bank honors a forged check, not just the subsections cited by the defendants in this case. *Nu-Way Services, Inc. v Mercantile Trust Co. Nat. Asso.*, 530 S.W.2d 743 (Mo. App. _____).

As the Supreme Court set out in *Schoenfelder v. Arizona Bank (1990) 165 Ariz. 79, 796 P.2d 881*, the bank must show how customer's delay in reviewing statement and notifying bank of forgeries resulted in the loss to the bank. In order to assert the defense of customer negligence in examination of statements as defense to action by customer to require bank to recredit account for payments made on checks containing forged signature, the bank must affirmatively establish that customer's negligence in inspecting statements or giving notice of forgeries caused the loss. *Id.*

This the defendant Vanguard failed to do in its motion. In re L & D Interests, Inc., 350 B.R. 391 (Bankr. S.D. Tex. 2006); Phariss v Eddy (1991, Iowa App) 478 NW2d 848, 17

1  UCCRS2d 181; Biltmore Assoc., Ltd. v Marine Midland Bank, N. A. (1991, 4th Dept) 178 App
2  Div 2d 930, 578 NYS2d 798, 17 UCCRS2d 179;  Lawyers' Fund for Client Protection of State of
3  N.Y. v. Gateway State Bank, 692 N.Y.S.2d 583 (Sup. Ct. 1999).  There is no doubt that a bank
4  must use reasonable and proper methods to detect forgeries.  Travelers Indem. Co. v. Good, 325
5  N.J. Super. 16, 737 A.2d 690 (App. Div. 1999), which issue is a question of fact.  National
6  Accident Ins. Underwriters, Inc. v. Citibank, F.S.B., 243 F. Supp. 2d 763 (N.D. Ill. 2002).

It is apparent that Vanguard was informed by plaintiff in 2005, by its own admission, that forgeries were occurring.  Vanguard undertook to "flag" the account and then failed to do so.

For those reasons, the motion should be denied.

Dated:  December 16, 2010

**THE NATHANSON LAW FIRM**

By:/s/  Philip J. Nathanson

Philip J. Nathanson
8765 East Bell Road, Suite 101
Scottsdale, Arizona 85260

*Attorneys for Plaintiffs Barbara Borchers and Jerald S. Chesler, as Trustee of the Betty D. Olson Revocable Trust and The Olson Living Trust*

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on December 16, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Howard Ross Cabot, Bar #006669
Christopher S. Coleman, Bar #018287
Jacob C. Robertson, Bar #024763
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788

s/ Philip J. Nathanson