Howard Ross Cabot, Bar #006669
Christopher S. Coleman, Bar #018287
Jacob C. Robertson, Bar #024763
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
HCabot@perkinscoie.com
CColeman@perkinscoie.com
JRobertson@perkinscoie.com

*Attorneys for Defendants*
  *The Vanguard Group, Inc. and*
  *Vanguard Marketing Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Borchers, as Trustee and as attorney in fact and, and Jerald S. Chesler, as a Trustee of the Olson Living Trust,<br><br>Plaintiffs,<br><br>v.<br><br>The Vanguard Group, Inc. and Vanguard Marketing Corporation,<br><br>Defendants. | No. CV08-02138-PHX-ROS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>(Oral Argument Requested) |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................... 1

Argument ........................................................................................................................ 2

    I.    UCC LAWS Governing Checks apply to Plaintiffs' Claim .......................... 2

    II.   The One Year Statute of Repose in A.R.S. § 47-4406(F) Bars Plaintiffs' Claim ................................................................................................ 4

        A.    Plaintiffs Concede That Vanguard Made Periodic Account Statements Available ................................................................................ 5

        B.    Plaintiffs Are Precluded from Seeking Reimbursement for Alleged Forgeries Because They Have Failed to Identify Any Unauthorized Signature ................................................................ 5

            1.    The alleged June 2005 meeting does not raise a triable issue of fact ................................................................................ 6

            2.    Plaintiffs' failure to identify specific checks cannot be excused. ............................................................................................. 8

        C.    A.R.S. § 47-4406(F) Provides an Independent Basis for Summary Judgment ...................................................................... 9

Conclusion ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Asian Int'l Ltd. V. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    435 So.2d 1058 (La. Ct. App. 1983) .................................................................. 3

*First Place Computers, Inc. v. Security Nat'l Bank of Omaha*,
    558 N.W.2d 57 (Neb. 1997) ............................................................................... 7

*New Gold Equities Corp. v. Chemical Bank*, 251 A.D.2d 91 (N.Y. App. Div. 1998) ......... 7

*Peters v. Riggs Nat'l Bank*, 942 A.2d 1163 (D.C. 2008) ...................................................... 9

*Pinasco v. Ara*, 219 A.D.2d 540 (N.Y. App. Div. 1995) .................................................... 3

*Woods v. MONY Legacy Life Ins. Co.*, 641 N.E.2d 1070 (N.Y. 1994) ............................... 3

**Statutes**

A.R.S. § 47-1103(A)(1) & (3) ............................................................................................. 3

A.R.S. § 47-3406 ................................................................................................................. 9

A.R.S. § 47-4105(1) ............................................................................................................ 2

A.R.S. § 47-4111 ................................................................................................................. 8

A.R.S. § 47-4401 ..................................................................................................... 1, 2, 3

A.R.S. § 47-4406 ......................................................................................................... passim

**Introduction**

This motion turns on a simple question: did the account-holder (Betty Olson) provide Vanguard with the required notice of an unauthorized signature on a check (or series of checks) within one year of receiving the account statement(s) in which the checks were identified? The answer is clear and indisputable: no such notice was provided here, and the Vanguard defendants are entitled to summary judgment.

Under the UCC, as adopted by Arizona, a plaintiff who receives account statements must promptly report an unauthorized signature on a check in order to preserve a claim for reimbursement, and if she does not report an unauthorized signature within a year, she loses all rights to make a claim against the institution on that particular check. Plaintiffs do not dispute that despite receiving regular account statements, Betty Olson never identified a single check she affirmatively disputed to Vanguard as bearing an unauthorized signature. Betty Olson's and Plaintiffs' failure to identify which (if any) checks were alleged to be forgeries and which checks were authorized makes Plaintiffs' claim unsustainable as a matter of law. And Plaintiffs' contention that Vanguard had general notice is not enough – the text of the statute and case law are clear that each item, i.e., check, must be identified.

Plaintiffs seek to dodge these well-established UCC standards relating to unauthorized signatures on checks by claiming that Vanguard is technically not a "bank" and therefore the UCC does not apply. However, it was Plaintiffs who brought suit for reimbursement of the unidentified checks under A.R.S. § 47-4401 (same as U.C.C. § 4-401), and in any event, Plaintiffs' position is contrary to the weight of authority on the issue and the UCC policies of uniformity and simplicity.

Plaintiffs also contend that a triable issue of fact exists as to whether Vanguard exercised adequate care in connection with the Olson Living Trust Account. While the evidence shows that Plaintiffs' forgery losses (if any) were due to Plaintiffs' own lack of

care rather than Vanguard's, the statute Vanguard relies on in its Motion, A.R.S. § 47-4406(F), applies regardless of the parties' relative care or lack of care. Plaintiffs have simply failed to identify the specific checks it believes were unauthorized, and the time to do so has long expired. As such, and as discussed in more detail below, this Court should grant summary judgment for Vanguard.

## Argument

### I. UCC LAWS GOVERNING CHECKS APPLY TO PLAINTIFFS' CLAIM.

Plaintiffs contend (at 1, 4) that the UCC laws governing unauthorized signatures on checks as adopted by Arizona do not apply to their claim because the allegedly forged checks were written from a Vanguard "mutual fund" account rather than a traditional "bank" account. This argument is flawed in two respects.

*First*, Plaintiffs have already stated the basis for their claim is Arizona's UCC check-writing statute. Plaintiffs stated in the joint Proposed Case Management Plan that their cause of action is based on A.R.S. § 47-4401 (same as UCC § 4-401). [Doc. 13, at 2-3] Plaintiffs pointed out that Arizona's adoption of the UCC statute enables a bank customer to "bring an action to require the bank to recredit the account for the wrongful disbursement of a forged check." [*Id.* at 3 (citation and quotation omitted)] Plaintiffs provided no other basis or legal theory for their cause of action, which seeks reimbursement of amounts allegedly paid wrongfully on checks drawn on the Olson Living Trust Account. [*Id.*] Now that Plaintiffs face the statutory defenses raised in Vanguard's Motion for Summary Judgment, they cannot disavow the very UCC statute that earlier provided the sole basis for their claim.

*Second*, Plaintiffs do not provide any explanation or authority for why Vanguard's check-writing redemption services should not be considered part of the "business of banking." *See* Ariz. Rev. Stat. § 47-4105(1). Nor do Plaintiffs provide any reason why the rules regarding a customer's duty to discover and report unauthorized signatures on

checks should not apply to Vanguard accounts with check writing.

While Arizona's courts have not specifically addressed whether non-bank financial services firms are engaged in the "business of banking" when they provide their clients with check-writing services on their accounts, courts in other jurisdictions have reasoned that so long as the checking account at issue resembles a traditional checking account, i.e., providing checks, honoring drafts, and forwarding regular customer statements, the UCC standards for detecting forgeries on returned drafts apply. *Pinasco v. Ara*, 219 A.D.2d 540 (N.Y. App. Div. 1995) (applying state's version of U.C.C. § 4-406 to claim against financial services corporation that administered checking accounts); *Asian Int'l Ltd. V. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 435 So.2d 1058, 1062 (La. Ct. App. 1983) (same); *see also Woods v. MONY Legacy Life Ins. Co.*, 641 N.E.2d 1070, 1072 (N.Y. 1994) (New York court of last resort applying New York's version of UCC § 4-406 to a life insurer that administered a money market account with check-writing privileges because UCC's strong policy of simplifying, clarifying, and modernizing the law governing commercial transactions favors "a uniform standard for detecting forgeries on returned drafts"); A.R.S. § 47-1103(A)(1) & (3) (adopting UCC policies).

Here, Plaintiffs do not dispute that Vanguard administered a check-writing, redemption-enabled money market account that was functionally similar to a traditional checking account in that Vanguard provided checks, honored drafts, and regularly mailed customer statements. [*See* Doc. 62, Vanguard's Separate Statement of Material Undisputed Facts in Support of Summary Judgment ("SOF") ¶¶ 3-9; Doc. 63, Affidavit of Joseph F. Parlapiano ¶ 9]

Because Plaintiffs have brought their claims pursuant to A.R.S. § 47-4401, and because the policies of the UCC are furthered by maintaining uniformity among other jurisdictions and institutions that administer types of checking accounts, the standards

under A.R.S. § 47-4406 should apply to Plaintiffs' claim for reimbursement of amounts paid on allegedly unauthorized checks.

## II. THE ONE YEAR STATUTE OF REPOSE IN A.R.S. § 47-4406(F) BARS PLAINTIFFS' CLAIM.

A.R.S. § 47-4406 sets forth a customer's duty to promptly discover and report each unauthorized signature or alteration that the customer wants to assert against a financial institution. The customer's duty to identify the unauthorized signature is triggered when account statements that reasonably identify the check are made available to the customer. *See* A.R.S. § 47-4406(A). If a customer reports an unauthorized signature on a check within a year from when the account statement is made available, the reasonable promptness of the customer's report is weighed against the bank's exercise of ordinary care in paying the check to determine whether the customer or bank should bear some or all of the loss from forgery. *Id.* §§ 47-4406(C)-(E). But where (as here) the customer fails to identify unauthorized signatures within one year after the statement is made available, A.R.S. § 47-4406(F) precludes the claims for reimbursement "*[w]ithout regard to care or lack of care of either the customer or the bank*." (emphasis added).

Relying on Section (F), Vanguard asserted in its Motion for Summary Judgment that despite having been sent regular account statements, Plaintiffs failed to identify the check or checks they contend were unauthorized and are therefore precluded from seeking reimbursement of any past check drawn from an account that was liquidated nearly three years ago. As discussed below, Plaintiffs have conceded that Vanguard made the account statements available, and Plaintiffs failed to submit any evidence in response to Vanguard's Motion that identifies the check number, amount, or dates of any allegedly unauthorized checks.[1]

---

[1] A practical consequence of Plaintiffs' refusal to identify the checks for which they seek reimbursement is the inability of Vanguard to investigate where the allegedly missing money went. Betty Olson was apparently generous to her children, purchasing a Scottsdale house for her daughter Barbara Borchers to live in and supporting her son

-4-

**A.   Plaintiffs Concede That Vanguard Made Periodic Account Statements Available.**

Vanguard provided undisputed evidence that it mailed statements for the Olson Living Trust Account to the address of record between 2005 and 2009. [Doc. 62, SOF ¶¶ 5-6] Accordingly, Plaintiffs concede that Vanguard met the threshold requirement in A.R.S. §§ 47-4406(F) for invoking the one-year statute of repose — that account statements be made available to the customer. [*See* Doc. 75, Plaintiffs' Response to Defendants' Statement of Undisputed Facts ("RSOF") (admitting SOF ¶¶ 1-9)]

Plaintiffs also concede that the account statements Vanguard mailed to Ms. Olson listed the check number, amount, and date of payment of each check paid on the account. [*See* Doc. 75, RSOF; Doc. 62, SOF ¶ 9] This information is deemed "sufficient" as a matter of law to "allow the customer reasonably to identify the items [i.e., checks] paid." A.R.S. § 47-4406(A).

**B.   Plaintiffs Are Precluded from Seeking Reimbursement for Alleged Forgeries Because They Have Failed to Identify Any Unauthorized Signature.**

Once a customer has been mailed the account statements, she is precluded from asserting an unauthorized signature against a financial institution if that particular signature is reported more than one year after the statement is available. A.R.S. § 47-4406(F). Plaintiffs do not take issue with the authority cited by Vanguard (at 8-9) in its Motion for Summary Judgment, which provides that general allegations of fraud or forgery are not a sufficient "report" under the statute; rather, a customer must specifically identify each item bearing the alteration or unauthorized signature.

---

Michael financially. [Doc. 72 (Borchers Dep.) at 16:13 – 17:8, 20:17-23] Also, Borchers testified that in the 2007 timeframe, her mother used $3500 of her Vanguard assets per month for living expenses for the house and Michael's dogs. [*Id.* at 77:1-18] Betty Olson also apparently used her Vanguard assets to pay for damage sustained in a car accident involving Michael. [*Id.* at 77:24 – 78:13] Betty Olson was also using her Vanguard assets for remodeling on the New Mexico house she and Michael lived in. [*Id.* at 88:2-11]

In support of its Motion for Summary Judgment, Vanguard cited deposition testimony from senior fraud investigator and corporate representative, William A. Matysik, that there is no record of the client, Betty Olson, ever reporting specific checks as bearing an unauthorized signature. [Doc. 62, SOF ¶ 10] Vanguard also cited the deposition testimony from Ms. Borchers and Mr. Matysik confirming that at no time did Plaintiffs seek reimbursement for paid checks or submit a statement of forgery in connection with specific checks. [*Id.*, SOF ¶ 11 ]

In response, Plaintiffs rely solely on a June 2005 meeting between Vanguard and Ms. Olson as creating an issue of fact as to whether Vanguard received the required notice during the one-year statute of repose. But, as discussed below, Plaintiffs have failed to raise a triable issue of fact.

### 1. The alleged June 2005 meeting does not raise a triable issue of fact.

In response to Vanguard's SOF ¶ 10, Plaintiffs do not dispute that Ms. Olson has never identified a specific check as bearing an unauthorized signature from late summer 2005 to the present; but rather, they contend that in a summer 2005 meeting with Vanguard representative Shelly Wilson a few checks were discussed as potentially being unauthorized. [Doc. 75, RSOF; Doc. 71, Plaintiffs' [Separate Statement of Facts] in Opposition to the Defendants Motion for Summary Judgment ("SSOF") ¶¶ 2-5, 55-56, and 62-63]

The alleged June 2005 meeting among Vanguard Representative Shelly Wilson, Barbara Borchers, and Betty Olson took place when Betty grew concerned about withdrawals from her account. [Doc. 71, SSOF ¶ 2] Plaintiffs do not dispute that at the close of the meeting, Betty Olson chose not to pursue reimbursement of funds or allegations of forgery because she did not want her son to get in trouble. [Doc. 62, SOF ¶ 11 (citing Barbara Borchers' testimony that her mother elected not to pursue reporting

her son for check fraud and never sought reimbursement of funds or submitted a statement of forgery following the summer 2005 meetings); Doc. 71, SSOF ¶ 11 (citing no evidence to controvert Ms. Borchers' testimony)][2]

Also, Plaintiffs correctly point out that when the signature discrepancies were raised, the Vanguard Representative Shelly Wilson contacted the fraud department, [Doc. 71, SSOF ¶ 61] but after Ms. Wilson contacted that department, Ms. Olson specifically told Ms. Wilson that she did not want Vanguard to pursue anything further. [Doc. 74, Wilson Dep. at 20:8-15]

None of these facts create a triable issue as to whether Vanguard received the required notice under the one-year statute of repose.

First, it is indisputable that the comments made to Ms. Wilson during the summer 2005 meeting did not satisfy the UCC's notification requirements. It is unclear whether Plaintiffs cite to the summer 2005 meeting (i) in an attempt to recover the unspecified amounts Betty Olson did not want to pursue at the time, or (ii) because Plaintiffs believe the meeting provided a general "future notice." If the first contention is intended, given Ms. Borchers' admission that her mother, to protect her son, told Vanguard not to take any action with respect to the checks with alleged signature discrepancies, Plaintiffs cannot now contend that the 2005 checks should not have been paid. *Cf. First Place Computers, Inc. v. Security Nat'l Bank of Omaha*, 558 N.W.2d 57, 59-60 (Neb. 1997) (noting that checks were "not at issue" where a customer visited with the bank regarding improper signatures but ultimately consented to payment of the checks). If the second contention is intended, courts have consistently rejected the argument that a customer provides the required notice merely by expressing general concerns about their account security. *See, e.g., id.* (affirming summary judgment where customer's general concerns

---

[2] Plaintiffs claim in their response (at 3) that a document sent to Vanguard had check amounts, but neglect to mention that the document was not from the customer Betty Olson and appears to have been an unauthorized stop payment request (not report of forgery) by the daughter Barbara Borchers. [Doc. 73, Matysik Dep. at 38:3-19]

-7-

about signature irregularities did not constitute specific report of allegedly fraudulent checks); *New Gold Equities Corp. v. Chemical Bank*, 251 A.D.2d 91 (N.Y. App. Div. 1998) (customer's request for canceled checks and account information did not constitute notice of allegedly forged checks).

Second, even if Ms. Olson's decision in summer 2005 to pay past checks and not pursue forgery allegations could be cobbled together into a "report" of an unauthorized signature, Plaintiffs have been unable or unwilling to identify the checks or amounts that were discussed at the meeting. Instead, Plaintiffs have stated that the allegedly "reported" items are "in the control of Vanguard" and presumably unknown to Plaintiffs. [Doc. 64-1, Counsel Decl., Ex. 5] But this is no excuse for Plaintiffs' failure to identify the checks. Plaintiffs admit that they received account statements, and these account statements provided all the information needed to identify questionable checks, either at the summer 2005 meeting or at any other time. [*See* Doc. 75, RSOF]

Third, even if Plaintiffs were to overcome the undisputed fact that they cannot identify any checks discussed in 2005 and the undisputed fact that Ms. Olson declined to work with Vanguard's fraud department to identify specific checks and submit a statement of forgery during the summer 2005, such a claim would be barred by the applicable three-year statute of limitations. A.R.S. § 47-4111. Plaintiffs did not file suit until October 23, 2008, more than three years after the alleged discussions during the summer 2005. Plaintiffs did not and cannot contest the application of the statute of limitations relating to the alleged meetings in summer 2005.

**2. Plaintiffs' failure to identify specific checks cannot be excused.**

In response to Vanguard's SOF ¶ 11, Plaintiffs do not dispute that they never sought reimbursement for specific checks or submitted a statement of forgery. [Doc. 75, RSOF; Doc. 71, SSOF ¶¶ 47-49 (citing the Deposition of William A. Matysik, at 16, 18-23)] Instead, Plaintiffs cite selective passages from Mr. Matysik's deposition in an

apparent attempt to leave the impression that Vanguard somehow dropped the ball by failing to send Betty Olson a statement of forgery. [*See* Doc. 71, SSOF ¶ 48] But as Mr. Matysik explained, to his knowledge, Ms. Olson was never sent a partially completed statement of forgery "[b]ecause she never made a direct allegation that specific checks were being forged by her son. . . ." [Doc. 62, SSOF ¶ 10]

In any event, Plaintiffs' assertion in response to SOF ¶ 11 that Vanguard should have foisted a statement of forgery on Betty Olson is immaterial because the one year statute of repose begins to run on a check the moment the customer's statement becomes available, and the duty to examine statements and report specific checks cannot be excused, even in the most extenuating circumstances. For example, in *Peters v. Riggs Nat'l Bank*, 942 A.2d 1163, 1168-71 (D.C. 2008), the court applied UCC § 4-406(f) where the plaintiff was a personal representative who discovered that the decedent was missing tens of thousands of dollars, which were apparently taken while the decedent was hospitalized and incapacitated. Distinguishing a statute of repose from a statute of limitation, the *Riggs* court concluded that the statute of repose is based on the UCC policies of efficiency, finality, uniformity and predictability. *Id.* at 1170-71. As such, regardless of whether Vanguard was supposed to encourage Betty Olson to identify specific checks on a statement of forgery or "red flag" the account as Plaintiffs claim, Plaintiffs have no excuse for failing to identify and report any forgeries based on the account statements they admittedly received and examined.

**C.    A.R.S. § 47-4406(F) Provides an Independent Basis for Summary Judgment.**

Finally, rather than simply addressing Section (F) by identifying any allegedly unauthorized checks and the dates on which the checks were reported, Plaintiffs focus their entire legal argument (at 5-7) on the comparative fault portions of the statute, Sections (D) and (E). Although there is ample evidence that Plaintiffs' lack of care,

rather than Vanguard's check-processing, caused Plaintiffs' unspecified losses due to forgery,[3] Section (F) specifically excludes the "care or lack of care of either the customer or the bank."  Accordingly, Plaintiffs' arguments about Vanguard's alleged lack of care miss the mark.  No amount of lack of care on Vanguard's part could excuse Betty Olson from identifying the checks Plaintiffs seek to have reimbursed.

## Conclusion

Because it is undisputed that Plaintiffs have failed to identify the checks they seek to have Vanguard reimburse, the Vanguard defendants respectfully request that this Court grant summary judgment in favor of the Vanguard defendants.

Dated:  January 6, 2011　　　　　　　　　**PERKINS COIE LLP**

By: s/ Jacob C. Robertson
　　Howard Ross Cabot
　　Christopher S. Coleman
　　Jacob C. Robertson
　　2901 North Central Avenue, Suite 2000
　　Phoenix, Arizona  85012-2788

*Attorneys for Defendants*
　*The Vanguard Group, Inc. and*
　*Vanguard Marketing Corporation*

---

[3] For example, evidence suggests that Betty Olson either gave or knew her son Michael Olson had access to her finances.  *See* A.R.S. §§ 47-3406.  Thus, Barbara Borchers testified that Michael lived with their mother in New Mexico, and Betty gave Michael access to her Bank of America account, PINs, and cards.  [Doc. 72 (Borchers Dep.) at 35:8 – 36:13]  Borchers also testified that Michael Olson was the only person Betty knew who had access to her Vanguard checkbook.  [*Id.* at 41:5 – 21]  Betty Olson also allegedly told her daughter that Michael was "always having [her] sign things."  [*Id.* at 63:16-25]

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on January 6, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Philip J. Nathanson [*philipj@nathanlawfirm.com*]
>The Nathanson Law Firm
>8765 East Bell Road, Suite 110
>Scottsdale, Arizona  85260
>*Counsel for Plaintiffs*

☒   I hereby certify that on January 6, 2011, I served the attached document by first class mail on Judge Silver, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

>s/ Indy Fitzgerald