IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| BARBARA BORCHERS, as Trustee of the Olson Living Trust; ET AL., | ) ) ) | No. 2:08-cv-02138-REJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | OPINION AND ORDER |
| VANGUARD GROUP INCORPORATED; ET AL., | ) ) ) ) | |
| Defendants. | ) | |

Philip Jeffrey Nathanson
NATHANSON LAW FIRM
8765 E. Bell Road, Suite 101
Scottsdale, AZ  85260

  Attorney for Plaintiffs

Christopher Stuart Coleman
Howard Ross Cabot
Jacob Clyde Robertson
PERKINS COIE LLP - PHOENIX, ARIZONA
P. O. Box 400
Phoenix, AZ  85001-0400

  Attorneys for Defendants

JONES, Judge:

Plaintiffs are trustees of the Olson Living Trust and bring this action against The

Vanguard Group and Vanguard Marketing Corporation, seeking to recover amounts from

wrongful disbursement of forged checks.  Amended Complaint, ¶ 4.  Plaintiffs allege that

Vanguard breached its duty to exercise ordinary care in managing the Olson Trust accounts and

that this breach contributed substantially to plaintiffs' loss in connection with the forged checks.

Amended Complaint, ¶ 7.  Defendants removed the action to this court on November 19, 2008,

based on diversity jurisdiction.

This case is now before the court on defendants' motion for summary judgment (# 61).

Having considered the parties' arguments and submissions, I grant defendants' motion.

## FACTUAL BACKGROUND

In early 2005, Betty Olson established the Olson Living Trust with The Vanguard Group.

See Declaration of Joseph F. Parlapiano in Support of Vanguard's Motion for Summary

Judgment ("Parlapiano Decl."), ¶ 7.  The trust account contained, among other investments, a

money market account with check writing privileges.  Id. at ¶ 4.

In the summer of 2005, Betty Olson and her daughter, plaintiff Barbara Borchers, met

with Vanguard representative Shelly Wilson to discuss checks that had been fraudulently written

against the money market account.  Declaration of Jacob Robertson in Support of Summary

Judgment ("Robertson Decl."), Exh. 1, p. 6.  During the meeting, Olson identified four specific

checks as fraudulently signed by her son, Michael Olson.[1]  Id. at pp. 6-7.  When asked if she

---

[1]     Shelly Wilson "doesn't remember" if four specific checks were presented, but she
acknowledges that she inspected some checks after the meeting and that the signatures on the
checks "didn't match" Olson's signature.  Plaintiffs' Response in Opposition to Defendants'
                                                                    (continued...)

wanted to take legal action against her son, Olson declined, stating that she "did not want her son to go to jail," but that she would have a talk with him to ensure that he would "never do it again." Id. at pp. 8-9.

Between the summer 2005 meeting and the April 2008 liquidation of the account, Borchers contacted Vanguard on several occasions to express a general concern that Michael Olson was continuing to write fraudulent checks against the account. See Robertson Decl., Exh. 1. However, the record contains no evidence that any checks other than those discussed at the summer 2005 meeting were specifically identified as fraudulently signed.

In April 2008, Olson liquidated the Olson Living Trust account and received the entirety of the proceeds. Id. at p. 22. Plaintiffs allege no fraud in connection with this transaction. Id. at p. 23.

On October 23, 2008, plaintiffs filed their complaint in Arizona Superior Court. On November 19, 2008, defendants removed the action to federal court.

## STANDARDS

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

---

[1](...continued)
Motion for Summary Judgment (# 71), Exh. 1, pp. 21-22.

The substantive law governing a claim determines whether a fact is material.  Anderson

v. Libery Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec.

Contractors, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts as to the existence of a

material factual issue are resolved against the moving party.  T.W. Elec. Service, 809 F.2d at

631.  Inferences drawn from facts are viewed in the light most favorable to the non-moving

party.  Id. at 630-631.

DISCUSSION

Defendants make two arguments in support of summary judgment:  (1) plaintiffs are

precluded from asserting a claim to recover amounts from wrongful disbursement of forged

checks because plaintiffs failed to report the forged checks to Vanguard within one year of

receiving an accounting statement as required by A.R.S. § 47-4406(F); and (2) if the claim

survives the one-year statute of repose, then the claim is barred by the three-year statute of

limitation set forth in A.R.S. § 47-4111.

Plaintiffs oppose summary judgment on two basic premises.  Plaintiffs' central premise is

that A.R.S. § 47-4406 and A.R.S. § 47-4111 apply only to banks and that Vanguard, as a mutual

fund company, does not receive the benefit of either the one-year statute of repose or the three-

year statute of limitations.  Plaintiffs also claim that even if Vanguard is a bank, plaintiffs' claim

is not barred by the one-year statute of repose because plaintiffs did not fail to report the forged

checks to Vanguard within one year of receiving the accounting statement.  Plaintiffs do not

respond to defendants' argument that the claim is barred by the three-year statute of limitations.

1.      Is Vanguard a Bank Under A.R.S. § 47-4105?

Plaintiffs' central premise that Vanguard is not a bank, and therefore does not receive the

benefit of any legal defenses available to banks, is incorrect as a matter of law.

Under A.R.S. § 47-4105(1), a bank is defined as "a person engaged in the business of banking" and includes "a savings bank, savings and loan association, credit union or trust company."  This definition is taken directly from the Uniform Commercial Code ("UCC") § 4A-105(a)(2).  The official comment to U.C.C § 4A-105 states that this broad definition reflects the fact that many financial institutions are now performing functions and providing services that once were restricted solely to commercial banks.  Courts in several states that have adopted the UCC have held that non-bank financial and investment firms are engaged in the business of banking when they provide their customers with check-writing services.  See, e.g., Pinasco v. Ara, 219 A.D.2d 540, 541 (N.Y. App. Div. 1995) ("Merrill Lynch acted as an entity engaged in the business of banking by providing plaintiff with a checking account, honoring drafts, accepting deposits and forwarding monthly customer statements."); Asian Int'l Ltd. v. Merrill Lynch, 435 So.2d 1058, 1062 (La. Ct. App. 1983) ("Since Merrill Lynch provided [the plaintiff/customer] with a general securities and a checking account, much like that provided by a depositary bank to its depositing customer, the relationship between Merrill Lynch and [plaintiff/customer] is analogous to that of a bank and its customer."); Woods v. MONY Legacy Life Ins. Co., 641 N.E.2d 1010, 1071-1072 (N.Y. 1994) ("Though not a bank, in its operation of the [money market checking] account defendant was 'engaged in the business of banking' for purposes of UCC 4-406(4).").

The U.S. District Court for the District of Arizona has likewise embraced a broad definition of a "bank" under A.R.S. § 47-4105(1).  See Gold v. Merrill Lynch & Company, Inc., 2009 WL 2132698 at *3 (D.Ariz.. July 14, 2009).  In Gold, the court held that an investment firm that provided its customers wholesale wire transfer services was "engaged in the business of banking" and therefore constituted a bank under A.R.S. § 47-4105(1).  Id.

5 - OPINION AND ORDER

Because the check-writing service Vanguard provided for the Olson Living Trust functioned as a traditional bank checking account that provided checks, honored drafts, and regularly mailed out accounting statements, this court concludes that Vanguard is a bank within the meaning of A.R.S. § 47-4105(1).

2.      Is Plaintiffs' Claim Time-Barred?

Defendants argue that plaintiffs failed to report the forged checks to Vanguard within one year, and failed to commence this action within the applicable three-year time limitation.  As explained below, I agree with defendants that plaintiffs' claim is barred by the three-year statute of limitations.  Consequently, I only briefly discuss the one-year reporting requirement, but I find that plaintiffs satisfied it.

A.R.S. § 47-4406(F) provides that "without regard to care or lack of care of either the customer or the bank, a customer who does not within one year [of receiving an accounting statement from the bank] discover and report the customer's unauthorized signature . . . is precluded from asserting against the bank the unauthorized signature or alteration."  Plaintiffs assert that in the June 2005 meeting with Vanguard representative Shelly Wilson, Olson orally identified four checks that had been fraudulently signed by Michael Olson, and that this identification met the requirement for "reporting" set forth in A.R.S. § 47-4406(F).  See Plaintiffs' Response, p. 2.

Some courts have held that to comply with the UCC  "reporting" requirement, a customer must specifically identify in writing each item bearing an unauthorized signature if he or she wishes to recover from the financial institution that disbursed the forged checks.  See, e.g., ASP Enters., Inc. v. Guillory, 22 So.3d 964, 980 (La. Ct. App. 2009) (general notice that a theft or forgery has occurred is not sufficient notice for purposes of UCC 4-406(f)); New Gold

6 - OPINION AND ORDER

Equities Corp. v. Chemical Bank, 251 A.D.2d 91, 91 (N.Y. App. Div. 1998) (affirming summary judgment because a report pursuant to UCC 4-406(f) "requires a writing clearly identifying the items claimed to have been improperly made"); First Place Computers, Inc. v. Sec. Nat'l Bank of Omaha, 558 N.W.2d 57, 61 (Neb. 1997) (voicing general concerns about account irregularities is not sufficient to constitute a "report" under UCC 4-406(f)).  Relying on New Gold Equities, supra,  defendants contend that plaintiffs were required to report the unauthorized signatures in writing.  I note, however, that more recently, one court has held that while written notice is preferred, the UCC does not require a customer to report unauthorized signatures in writing: "Rather, the critical element of the notice is not its form, but the specificity with which it identifies the allegedly fraudulent items."  Robinson Motor Xpress, Inc. v. HSBC Bank, 37 A.D.3d 117, 124 (N.Y. App. Div. 2006).

If I were required to decide the issue of written versus oral notice to resolve the pending motion, I would find that, as a practical matter, Betty Olson's verbal identification to a Vanguard representative of four specific checks as fraudulently signed meets the reporting requirement in A.R.S. § 47-4406(F).  In any event, plaintiffs' claim is barred by A.R.S. § 47-4111, which requires a claim for recovery of wrongfully disbursed checks be commenced within three years after the claim accrues.  And although there appears to be no precedent suggesting that the Arizona discovery rule applies to UCC claims, in general Arizona's discovery rule provides that the statute of limitations does not begin to run until a plaintiff knows, or should know by the exercise of reasonable diligence, about the injury giving rise to the claim.  Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am., 898 P.2d 964, 965-968 (Ariz. 1995).

By her own admission, Borchers was present at the June 2005 meeting and witnessed her mother declare that the four checks presented to her had been fraudulently signed.  Robertson

7 - OPINION AND ORDER

Decl., Exh. 1, pp. 6-7.  Because plaintiffs did not file this action until October 23, 2008, more

than three years after that meeting, their claim is barred by the three-year statute of limitations.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (# 61) is

GRANTED.  Any other pending motions are denied as moot and this action is dismissed with

prejudice.

DATED this 11th day of July, 2011.


/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge